**STATE OF RHODE ISLAND** **SUPERIOR COURT**
**PROVIDENCE, SC.**

| | | |
|---|---|---|
| MADISON LEIGH PROPERTIES LLC,<br>Plaintiff, | : | |
| v. | : | C.A. No. PC2026-_____ |
| CITY OF WOONSOCKET, RHODE ISLAND, and JOHN PAGLIARINI, individually and in his official capacity as interim Tax Assessor and interim Director of Building Code Enforcement for the City of Woonsocket,<br>Defendants. | : | |

## VERIFIED COMPLAINT

Plaintiff Madison Leigh Properties LLC ("Plaintiff"), by and through its attorneys, Bilodeau Capalbo, LLC, files this Complaint against Defendants City of Woonsocket, Rhode Island ("the City") and John Pagliarini ("Pagliarini"), individually and in his official capacity, and alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from the City of Woonsocket's repudiation of a fully executed, notarized, and recorded Payment-in-Lieu-of-Taxes ("PILOT") Agreement after two years of affirmative performance under it, and from the documented quid pro quo coercion by the City's interim Tax Assessor, John Pagliarini, who used his official position to extract personal economic benefits from Plaintiff in an unrelated private landlord-tenant matter.

2. The City executed the Agreement on May 19, 2022 through its Mayor, had it notarized, and had its City Clerk record it in the Woonsocket land evidence records. The City honored the Agreement for two consecutive fiscal years by issuing a $26,549.59

abatement in September 2023 and by applying a dedicated "Tax Stabilization Agreement" exemption code (Exemption Code 62) in its FY 2024 billing system, calculating the exact contractual amount of $2,925.52 per year. Then, after Plaintiff had invested $3,809,000 in reliance on the Agreement, the City repudiated it.

3. Separately, interim Tax Assessor Pagliarini used his official City position to coerce Plaintiff into abandoning eviction proceedings against his subordinate and close personal friend, conditioning his assistance with the tax stabilization matter on Plaintiff's compliance with his personal demands. This conduct is documented by contemporaneous email correspondence from Pagliarini's official City email account.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to R.I. Gen. Laws § 8-2-14, which confers upon the Superior Court original jurisdiction of all actions at law in which title to real estate or some right or interest therein is in issue, and exclusive original jurisdiction of all other actions at law in which the amount in controversy exceeds ten thousand dollars ($10,000). The amount in controversy in this action exceeds ten thousand dollars ($10,000), and Plaintiff's claims place rights and interests in real estate in issue. The Court has jurisdiction over the federal civil rights claims alleged herein under 42 U.S.C. § 1983, which may be adjudicated in state courts of general jurisdiction under principles of concurrent jurisdiction.

5. Venue is proper in Providence County because the subject property is located in the City of Woonsocket, which lies within Providence County, and because a substantial part of the events giving rise to the claims occurred in Woonsocket.

6. No exhaustion of administrative remedies is required for the claims alleged herein. This is an action to enforce a fully executed, notarized, and recorded contract, and for related declaratory, equitable, and federal civil rights relief. The Agreement itself provides in Section 4 that the remedies of the Owner are "specifically limited to actions for breach of this Pilot Agreement." The federal civil rights claims under 42 U.S.C. § 1983 are not subject to any state administrative exhaustion requirement.

7. Nor are the claims alleged herein subject to the statutory tax-appeal process, and any resort to that process would be futile. Under R.I. Gen. Laws § 44-3-9, a stabilization agreement fixes the amount to be paid notwithstanding the valuation of the property or the rate of tax; Plaintiff's claims enforce that contractual obligation and do not contest a valuation methodology. The administrative appeal route addresses only the amount of an individual valuation, is conditioned upon the taxpayer first paying the disputed tax under protest, and affords no authority to adjudicate the validity, ratification, or repudiation of the Agreement, to enforce a contract, or to award the declaratory, injunctive, compensatory, or restitutionary relief sought herein.

**PARTIES**

8. Plaintiff Madison Leigh Properties LLC is a Rhode Island limited liability company that owns the property located at 43 Railroad Street, Woonsocket, Rhode Island (Assessor's Plat 14, Lot 205), and the property located at 122 North Main Street, Woonsocket, Rhode Island.

9. Defendant City of Woonsocket is a municipal corporation organized under the laws of the State of Rhode Island.

10. Defendant John Pagliarini is an individual who, at all relevant times, served as the interim Tax Assessor and interim Director of Building Code Enforcement for the City of Woonsocket. Pagliarini is sued in his individual capacity for his personal participation in the constitutional violations alleged herein, and in his official capacity to the extent necessary for declaratory and injunctive relief.

## FACTUAL ALLEGATIONS

### The PILOT Agreement

11. The property at 43 Railroad Street (Assessor's Plat 14, Lot 205) is expressly listed among the parcels eligible for the City's Omnibus Tax Stabilization Program in Section 3 of Ordinance 16 O 16. On November 17, 2020, the City's Director of Planning and Development issued to 43 Railroad Street, LLC a written Statement of Preliminary Eligibility under the Program, on the form prescribed by Exhibit B to Ordinance 16 O 16, stating that the property "qualified under the provisions" and that the owner "will be awarded the appropriate tax abatements applicable to this project under the provisions of the Program." Copies of that determination were directed to Elyse Pare, Acting Tax Assessor, and Brad Ward, Building Official. A true and accurate copy of Ordinance 16 O 16 is attached hereto as **Exhibit 1**, and a true and accurate copy of the November 17, 2020 Statement of Preliminary Eligibility is attached hereto as **Exhibit 2**, each incorporated herein by reference.

12. On May 19, 2022, the City and 43 Railroad Street LLC, then the record owner of the property, entered into a Payment-in-Lieu-of-Taxes ("PILOT") Agreement (the "Agreement") pursuant to R.I. Gen. Laws § 44-3-9 and the City's Omnibus Tax Stabilization Program established by Ordinance 16 O 16. The Agreement was executed

on the City's own standard form, Exhibit D to Ordinance 16 O 16. A true and accurate copy of the recorded Agreement is attached hereto as **Exhibit 3** and incorporated herein by reference.

13. The Agreement was signed by then-Mayor Lisa Baldelli-Hunt on behalf of the City and by a representative of 43 Railroad Street LLC on behalf of the Owner, each in the presence of a witness. Both signatures were acknowledged before notaries public on May 19, 2022, the Mayor's acknowledgment being taken by Jennifer A. Masse (Commission expiring 08/20/2024). The Agreement was received and recorded by City Clerk Christina Harmon on August 30, 2022 (Doc: 00223891, Book: 2759, Pages 274–282). A handwritten "as of" date of June 3, 2022 appearing on the first page of the Agreement is a scrivener's error; both notarial acknowledgments establish that the Agreement was executed on May 19, 2022.

14. The Agreement establishes a twelve-year graduated payment schedule beginning at $2,925.52 per year for Years 1 through 3, increasing incrementally to 100% of the true tax in Year 12.

15. Page 2 of the Agreement expressly recites that "the City Council has found and determined" the PILOT to be in the public interest, that it is authorized under Chapter 44-3-9, and that the payments are fair and equitable.

16. Section 6 of the Agreement provides that the City "shall" accept the PILOT payments "in full satisfaction of the obligations of the Owner."

17. Section 8 of the Agreement provides that it is transferable and "shall not terminate upon the sale of the property or the dissolution of the Owner." Section 1(d) of the Agreement

defines "Property Owner" to mean "the Owner and their successors." Plaintiff acquired the property at 43 Railroad Street from 43 Railroad Street LLC on July 11, 2022, and is accordingly a successor Owner within the meaning of Section 1(d), vested with all rights of the Owner under the Agreement, including the right to enforce the Agreement under Section 11.

18. Section 11 of the Agreement provides that it "constitutes the entire agreement of the parties hereto with respect to the subject matter hereof" and may only be modified in writing. Section 11 further provides that the Agreement "has been entered into for the benefit of the Owner and shall be enforceable by the Owner against the parties hereto."

19. The Agreement does not state that it is "subject to City Council approval." It does not provide that it "shall not take effect until" any further action occurs. It contains no condition subsequent. The recitals on Page 2 of the Agreement confirm, in the past tense, that the City Council "has found and determined" the findings required by R.I. Gen. Laws § 44-3-9. The definition of "Commencement date" in Section 1(h) of the Agreement fixes the timing of the twelve-year term; it does not condition the validity or enforceability of the Agreement. The Commencement Date occurred no later than the July 2022 transfer of the property, as the City itself confirmed through its subsequent performance under the Agreement.

20. The notarization attests that Mayor Baldelli-Hunt appeared and acknowledged that she is the Mayor of the City of Woonsocket and that the Agreement was signed by her on behalf of the City as her free act and deed.

Case 1:26-cv-00711-JJM-RLA Document 1-1 Filed 09/29/26 Page 7 of 29 PageID #: 9


21. Mayor Baldelli-Hunt was the designated signatory for tax stabilization agreements under the City's own Omnibus Tax Stabilization Program procedure established by Ordinance 16 O 16.

**The Purchase and Reliance**

22. On July 11, 2022, Plaintiff purchased the property at 43 Railroad Street from 43 Railroad Street LLC for $3,809,000.

23. The purchase and the financing for the acquisition were expressly contingent upon the existence and enforceability of the Agreement.

24. Without the Agreement, the property would operate at a financial loss and the investment would not have been economically viable. Plaintiff would not have purchased the property but for the City's execution of the Agreement.

**The City's Two Years of Performance**

25. On September 19, 2023, the City issued an abatement of $26,549.59 (Transaction #3063118) against the FY 2023 tax bill of $30,503.36 for Account R01-0006-40. This abatement reduced Plaintiff's tax liability to reflect the TSA payment schedule. This was an affirmative act of the City's Tax Assessor's Office recognizing and applying the Agreement. A true and accurate copy of the abatement record is attached hereto as **Exhibit 4** and incorporated herein by reference.

26. The City's FY 2024 tax bill for Account R01-0006-40 expressly applied Exemption Code 62, "Tax Stabilization Agreement," reducing the taxable valuation from $1,288,700 by an exemption of $1,180,267, yielding an annual tax of exactly $2,925.52, the precise amount set forth in the Agreement for Years 1 through 3. A true

and accurate copy of the FY 2024 tax bill is attached hereto as **<u>Exhibit 5</u>** and incorporated herein by reference.

27. The FY 2024 bill calculated four quarterly installments of $731.38. The City's billing system contained a specific exemption code dedicated to tax stabilization agreements, and the City's Tax Assessor's Office applied that code and calculated the bill in strict accordance with the Agreement.

28. Plaintiff tendered payments in accordance with the FY 2024 bills at the TSA rate. The City accepted those payments.

29. Since the July 11, 2022 purchase, Plaintiff has paid a total of $43,195.55 in cash to the City on Account R01-0006-40. Under the Agreement, Plaintiff's total obligation for the first three fiscal years was $8,776.56 ($2,925.52 × 3). Plaintiff has therefore overpaid by approximately $34,419.

**The City's Repudiation**

30. In September 2024, the City took the position that the Agreement was "never approved by city council."

31. In July 2025, the City issued a tax bill for $52,468.29, approximately eighteen times the $2,925.52 payment called for under the Agreement, based on a new assessed value of $2,463,300, a 91% year-over-year increase from the previous assessed value of $1,288,700.

32. After the 2025 tax bills had already been issued, someone within the City arbitrarily and further increased the assessed valuation of 43 Railroad Street to $3,172,900, bringing the total year-over-year increase to 146%.

33. This post-billing revision had no basis in any city-wide revaluation, any improvement to the property, or any rational valuation methodology.

34. The City never billed Plaintiff at the $3,172,900 figure. Before issuing its July 2026 tax bills, the City reversed the post-billing revision, and the July 2026 bills for 43 Railroad Street were issued at an assessed value of $2,463,300. The City's own reversal of the revision confirms that it lacked any valuation basis.

35. On February 19, 2026, the City issued a Past Due Notice reflecting a balance of $14,422.66, including $1,186.18 in accrued interest. A true and accurate copy of the Past Due Notice is attached hereto as **Exhibit 6** and incorporated herein by reference.

36. The City has at no time provided Plaintiff with a written determination that the Agreement is invalid. The City has at no time identified any specific procedural defect in the Agreement's execution.

**Mayor Beauchamp's Knowledge and Acknowledgment**

37. Mayor Christopher Beauchamp has personal, direct knowledge of the Omnibus Tax Stabilization Program. City Council public hearing minutes from March 7, 2016 reflect that Ordinance 16 O 16 was read by title at a public hearing, and the motion to adjourn was seconded by Councilman Beauchamp.

38. On December 12, 2024, Defendant Pagliarini emailed Plaintiff's principal, Josh Hennessy, from his official City email (jpagliarini@woonsocketri.org) stating: "The Mayor would like you and Richard to come in for a meeting prior to Christmas." The Mayor's Administrative Assistant, Susan Gaulin (sgaulin@woonsocketri.org), confirmed the meeting for December 18, 2024 at 11:30 AM.

39. At the December 18, 2024 meeting, Mayor Beauchamp verbally acknowledged that the City "has culpability here," expressed appreciation for Plaintiff's willingness to meet, and stated his desire to "work it out."

40. Despite this acknowledgment, the City has taken no corrective action. The City has continued to issue inflated tax bills, has failed to respond to Plaintiff's December 2024 restructuring proposal (submitted at the Mayor's request), and has allowed Plaintiff's financial position to deteriorate.

**The Pagliarini Quid Pro Quo**

41. At all relevant times, Defendant Pagliarini served as the interim Tax Assessor and interim Director of Building Code Enforcement for the City of Woonsocket. In those capacities, he had authority over tax assessment matters and building code enforcement affecting Plaintiff's properties.

42. In or around late 2024, Pagliarini contacted Hennessy by telephone and demanded that Plaintiff halt eviction proceedings against a tenant at 122 North Main Street, Kendra Dumont, Pagliarini's subordinate and close personal friend. Pagliarini has himself described Dumont as his friend and has acknowledged having been inside her apartment.

43. Pagliarini stated that if Plaintiff did not stop the eviction, he would be "forced" to defend Dumont and "wouldn't be able to help" Plaintiff on the tax issue at 43 Railroad Street.

44. This was an explicit quid pro quo: official action conditioned on favorable treatment of a personal friend and subordinate.

45. On December 11, 2024, Hennessy emailed Pagliarini at his official City email address (jpagliarini@woonsocketri.org) with the subject line "Kendra Dumont," advising that Plaintiff had instructed its eviction attorney to work out a plan, stating: "I advised that I am willing to forgive a significant portion of the unpaid rent balance if she can move out by January 16."

46. Pagliarini responded from his official City email at 11:06 AM on December 11, 2024, with "TY." True and accurate copies of the December 2024 email correspondence between Hennessy and Pagliarini are attached hereto as **Exhibit 7** and incorporated herein by reference.

47. The December 11 email was sent one day before Pagliarini arranged the December 18 meeting with Mayor Beauchamp regarding 43 Railroad Street. Pagliarini was simultaneously managing both matters using his official City position.

48. As a direct result of Pagliarini's coercion, Plaintiff abandoned the eviction of Dumont and offered to forgive a significant portion of her unpaid rent balance if she vacated by an agreed date. Dumont did not vacate. She instead paid the outstanding balance at the last moment and remained in possession, depriving Plaintiff of the benefit of the eviction proceeding it had been coerced into abandoning and delaying its recovery of possession of the unit. Dumont was subsequently evicted for nonpayment of rent.

**The Assessment Disparity**

49. Plaintiff has prepared an analysis of 22 comparable multi-family properties in Woonsocket. The average year-over-year assessment increase for comparable properties was 33%. The average increase for Plaintiff's two properties was 124%. No

improvements were made to either of Plaintiff's properties. A true and accurate copy of the comparable-property analysis is attached hereto as **Exhibit 8** and incorporated herein by reference.

50. The average per-unit assessment value of comparable properties is $82,855. Plaintiff's properties average $130,087 per unit, a 57% difference. Plaintiff's properties carry the two highest per-unit values identified in the analysis.

51. The average value per square foot of living area for comparable properties is $95.17/sf. Plaintiff's properties average $184.86/sf, a 94% difference. 43 Railroad Street carries the highest per-square-foot value identified in the analysis, at $219.88/sf, which is 131% above the average of the comparable properties analyzed.

52. Most of the apartments at Plaintiff's properties are less than 500 square feet and have no notable features that could justify the disparity with comparable properties.

53. The property at 122 North Main Street received a 102% increase in assessed value (from $1,089,500 to $2,203,100). The property at 43 Railroad Street received a 146% total increase (from $1,288,700 to $3,172,900). The City subsequently retreated from both increases. The $3,172,900 valuation of 43 Railroad Street was reversed before the July 2026 bills, which were issued at an assessed value of $2,463,300, and the assessment of 122 North Main Street was subsequently reduced to $1,838,700. These subsequent reductions confirm that the increases as originally imposed were not supported by any legitimate valuation methodology.

## COUNT I
## DECLARATORY JUDGMENT
**(Against Defendant City of Woonsocket)**

54. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

55. An actual, justiciable controversy exists between Plaintiff and the City regarding the validity, enforceability, and binding effect of the Agreement.

56. The Agreement was executed by the City's chief executive officer, who was the designated signatory under the City's own Omnibus Tax Stabilization Program. It was witnessed, notarized, and recorded by the City Clerk in the Woonsocket land evidence records. It recites on its face that the City Council made the requisite findings. It is unconditional and integrated.

57. The City honored the Agreement for two consecutive fiscal years through an abatement in September 2023 and by applying Exemption Code 62 in its FY 2024 billing system at the exact contractual amount.

58. The City's repudiation of the Agreement has caused Plaintiff ongoing and irreparable harm, including the inability to sell or refinance the property, technical default on loan covenants, the accrual of inflated tax bills with interest, and the forced offering of both properties for sale.

59. Plaintiff is entitled to a declaratory judgment pursuant to R.I. Gen. Laws § 9-30-1 declaring that the Agreement is valid, binding, and enforceable for its full twelve-year term.

**COUNT II**
**BREACH OF CONTRACT**
**(Against Defendant City of Woonsocket)**

60. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

61. The Agreement is a valid and binding contract between the City and the Owner, and Plaintiff, as successor Owner under Section 1(d) and Section 8 of the Agreement, is entitled to enforce the Agreement against the City.

62. Plaintiff has performed its obligations under the Agreement, including tendering payments at the contractual rate. Plaintiff has overpaid by approximately $34,419.

63. The City breached the Agreement by repudiating it, by issuing tax bills in excess of the amounts set forth in the Agreement, by imposing penalties and interest on amounts not owed, and by failing to accept Plaintiff's PILOT payments in full satisfaction of Plaintiff's obligations as required by Section 6 of the Agreement.

64. As a direct and proximate result of the City's breach, Plaintiff has suffered damages including the overpayment of approximately $34,419, ongoing excess tax billings, diminution in property value, consequential damages from loan covenant defaults, inability to sell or refinance, and loss of the benefit of the bargain for the remaining years of the Agreement.

**COUNT III**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Defendant City of Woonsocket)**

65. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

66. Every contract in Rhode Island contains an implied covenant of good faith and fair dealing that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

67. The City's conduct in honoring the Agreement for two years and then repudiating it, in connection with the Pagliarini quid pro quo and the retaliatory assessment increases, constitutes a breach of the implied covenant of good faith and fair dealing.

68. As a direct and proximate result of the City's breach, Plaintiff has suffered the damages described herein.

**COUNT IV**
**42 U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS**
**(Against Defendant Pagliarini Individually and Defendant City of Woonsocket)**

69. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

70. At all relevant times, Pagliarini acted under color of state law within the meaning of 42 U.S.C. § 1983. He used his official City email address, acted in his official capacities as City Assessor and Director of Building Code Enforcement, and exercised governmental authority over Plaintiff's tax assessments.

71. Plaintiff has a protected property interest in the Tax Stabilization Agreement and in fair, non-arbitrary tax assessments.

72. Pagliarini's conduct, conditioning his official assistance with Plaintiff's tax stabilization matter on Plaintiff's abandonment of eviction proceedings against his subordinate and close personal friend, documented by the December 11, 2024 email

exchange, constitutes arbitrary, conscience-shocking executive action that violates the substantive component of the Due Process Clause of the Fourteenth Amendment.

73. Only the most egregious executive action can be said to be arbitrary in the constitutional sense, and the measure of an executive abuse of power is conduct that shocks the conscience. A City Assessor who uses his governmental authority over a taxpayer's financial and property interests to extract personal economic benefits for a friend and subordinate engages in precisely such conscience-shocking conduct.

74. Egregious, intentional, and legally baseless official conduct that targets specific property owners violates due process. Pagliarini's conduct, using his official position to coerce the abandonment of a lawful eviction for the private benefit of his friend and subordinate, was egregious, intentional, without any legal basis, and undertaken for personal and private benefit rather than any legitimate governmental purpose.

75. Pagliarini's conduct also violates the due process clause of article I, section 2 of the Rhode Island Constitution, which includes a substantive component that guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate.

76. Official extortion does not require that the official personally receive the benefit; it is sufficient that the official obtained a benefit to which he was not entitled, knowing it was provided in return for official acts, even where the benefit flows to a third party. The benefits here flowed to Kendra Dumont, including the abandonment of the eviction against her, the offer of partial forgiveness of her unpaid rent balance, and the additional

time in possession she thereby obtained, and Pagliarini obtained them through the wrongful use of his official position.

77. The City is liable for Pagliarini's conduct. A municipality is liable under 42 U.S.C. § 1983 where a constitutional violation results from official policy or custom, including a single decision by an official with final policymaking authority in the relevant area, and whether an official possesses final policymaking authority is a question of state and local law. As a matter of state and local law, final authority over the valuation of property in Woonsocket is vested in the Tax Assessor: R.I. Gen. Laws § 44-5-74.2 requires the assessor of the City of Woonsocket to make a full and fair cash valuation of all ratable property annually, and Chapter VI, Article 1, Section 3 of the Woonsocket Home Rule Charter provides that the city assessor "shall be responsible for the fixing of an assessed valuation on all property liable to taxation and for the preparation of an assessment roll and a tax roll for the city." No other City official or body is empowered to fix assessed valuations. The Board of Assessment Review established by Chapter VI, Article 3 of the Charter acts only upon a taxpayer-initiated appeal, only as to the amount of an individual valuation, and only after the disputed tax "has been paid under protest"; it neither sets nor reviews assessment policy. Pagliarini's acts in fixing the retaliatory valuations were therefore the acts of the official with final policymaking authority over property valuation and are chargeable to the City. Further, and in the alternative, Mayor Beauchamp met with Plaintiff on December 18, 2024, with knowledge of the quid pro quo, verbally acknowledged the City's culpability, and took no corrective action, thereby ratifying, as an authorized policymaker, both Pagliarini's decision and the basis for it.

78. As a direct and proximate result of the violations of Plaintiff's substantive due process rights, Plaintiff has suffered damages including the costs of the abandoned eviction proceeding, the delay in recovering possession of the unit at 122 North Main Street, the rent left unpaid during Dumont's continued occupancy, which ultimately required a second eviction proceeding, and the chilling of Plaintiff's exercise of its property rights. These damages will be proven at trial.

**COUNT V**
**42 U.S.C. § 1983 - EQUAL PROTECTION (CLASS OF ONE)**
**(Against Defendant Pagliarini Individually and Defendant City of Woonsocket)**

79. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

80. The Equal Protection Clause of the Fourteenth Amendment prohibits intentional, irrational discrimination against a class of one.

81. Equal protection claims may be brought by a class of one where a plaintiff is intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. Property tax assessments that impose gross and sustained disparities relative to comparable properties deny the targeted taxpayer the equal protection of the laws.

82. Plaintiff's two properties received assessment increases of 102% and 146%, respectively, while 22 comparable multi-family properties in the same City, assessed in the same cycle, received an average increase of 33%.

83. This selective treatment was not rationally related to any legitimate government interest. It was connected to the Pagliarini quid pro quo and to the City's repudiation of the Agreement.

84. The second increase imposed on 43 Railroad Street, the post-billing revision of the assessed valuation from $2,463,300 to $3,172,900, was imposed outside any city-wide revaluation, statistical revaluation, or update. Under R.I. Gen. Laws § 44-5-12(a), there shall be no adjustment to an assessment because of an increase or decrease in value as a result of market forces in years when there is no revaluation, statistical revaluation, or update. That targeted post-billing increase violated this statutory mandate and constituted selective, arbitrary, and discriminatory assessment, undertaken as part of no definite or logical plan applicable to all properties in the City. The assessment of property in a year in which no revaluation, statistical revaluation, or update occurs is not a discretionary act; it is constrained by the statutory mandate of R.I. Gen. Laws § 44-5-12(a).

85. The equal protection guarantee of Article I, Section 2 of the Rhode Island Constitution independently prohibits the selective, discriminatory assessment of Plaintiff's properties.

86. The City is liable for these constitutional violations for the reasons stated in Count IV.

87. As a direct and proximate result of the equal protection violations, Plaintiff has suffered damages including excess tax assessments, diminution in property value, and the chilling of its property rights. These damages will be proven at trial.

**COUNT VI**
**42 U.S.C. § 1983 - PROCEDURAL DUE PROCESS**

**(Against Defendant Pagliarini Individually and Defendant City of Woonsocket)**

88. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

89. Plaintiff possesses constitutionally protected property interests in the recorded Agreement, in the stabilized payment obligations the Agreement fixes, in the funds the City has exacted in excess of those obligations, and in the ownership and operation of its properties free of unlawful charges, penalties, interest, and liens.

90. The City deprived Plaintiff of those property interests through deliberate institutional action: it repudiated the recorded Agreement, retroactively re-billed the property in disregard of the stabilized schedule, imposed a targeted post-billing assessment increase on 43 Railroad Street outside any city-wide revaluation, statistical revaluation, or update, demanded payment of amounts not owed, and threatened enforcement measures including interest, penalties, and liens.

91. The City afforded Plaintiff no notice and no opportunity to be heard before repudiating the Agreement, before imposing the retroactive charges, or before imposing the targeted assessment increases. These deprivations were carried out by authorized officials pursuant to deliberate decisions of the City, not by any random or unauthorized act, and pre-deprivation process was both feasible and constitutionally required.

92. The administrative avenue established by the City's Charter, appeal to the Board of Assessment Review, is not a substitute for the process due. It addresses only the amount of an individual valuation, it is conditioned upon the taxpayer first paying the disputed

tax under protest, and it has no authority to adjudicate the validity or repudiation of the Agreement or to award the relief the deprivations require.

93. This conduct deprived Plaintiff of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and article I, section 2 of the Rhode Island Constitution.

94. The City is liable for these violations for the reasons stated in Count IV. Pagliarini is liable individually for the deprivations he effected through the retaliatory valuations he fixed.

95. As a direct and proximate result of these violations, Plaintiff has suffered damages including the amounts exacted in excess of the stabilized schedule, accrued interest and penalties on amounts not owed, and the costs of protecting its properties from unlawful enforcement, in amounts to be proven at trial.

**COUNT VII**
**RATIFICATION AND EQUITABLE ESTOPPEL**
**(Against Defendant City of Woonsocket)**

96. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

97. The City possesses, and has exercised, the statutory power to stabilize the taxes on the subject property. R.I. Gen. Laws § 44-3-9 grants the City that power. The City Council exercised it by enacting Ordinance 16 O 16 following the public hearing required by the statute, by making the legislative findings for the Omnibus Tax Stabilization Program, by designating the eligible parcels, including 43 Railroad Street (Assessor's Plat 14, Lot 205), and by directing in Section 5 of the ordinance that the terms of each

agreement be negotiated by the Mayor and executed on the form attached to the ordinance as Exhibit D. Any claimed absence of a separate City Council vote on the Agreement is, at most, an irregularity in the execution of a power the City possesses and has exercised through its Council's own legislation; it is not an act beyond the City's corporate powers.

98. The City, through officers acting within the scope of the authority conferred by the City Council's own ordinance, made affirmative representations that the Agreement was valid and binding: its Director of Planning and Development issued the November 17, 2020 Statement of Preliminary Eligibility for the property; its Mayor, the officer designated by the City Council to execute Program agreements, executed the Agreement on the City's own Exhibit D form reciting the Council's findings; and its City Clerk recorded the Agreement in the Woonsocket land evidence records without qualification.

99. The City made further affirmative representations by issuing the September 2023 abatement of $26,549.59 and by applying Exemption Code 62 in its FY 2024 billing system at the exact contractual amount of $2,925.52.

100. Ordinance 16 O 16 itself ensures City Council knowledge of every agreement in the Program. Section 5 of the ordinance requires that the award letter and fiscal impact statement for each proposed agreement be filed with the Office of the City Clerk at least ten business days before execution and forwarded to the members of the City Council, and, as amended by the City Council on March 7, 2016, the ordinance requires the Director of Planning and Development to submit an annual report of all properties in the Program to the City Clerk for distribution to the City Council members by June

1 of each year. At no time between the execution of the Agreement and September 2024 did the City Council repudiate, question, or take any action against the Agreement.

101. Plaintiff justifiably relied on these affirmative representations by investing $3,809,000 in the property, obtaining financing contingent on the Agreement, and forgoing alternative transactions.

102. Plaintiff has permanently altered its position in reliance on the City's representations and cannot be restored to the status quo ante.

103. Under Rhode Island law, a party that has received the benefit of the performance of a contract will not be permitted to deny its obligations unless a paramount public interest requires, and a city council that receives the benefits of a mayor-executed agreement while maintaining its silence ratifies that agreement. Equitable estoppel likewise applies to a municipality when appropriate circumstances, justice, and right so require and when the equities are clearly balanced in favor of the party seeking relief. The City accepted Plaintiff's PILOT payments, billed the property at the contractual amount, retained the benefits of Plaintiff's $3,809,000 investment in a Program property, and remained silent for more than two years. The City has ratified the Agreement. No paramount public interest permits the City to deny its obligations; the City Council itself determined in Ordinance 16 O 16 that the Program inures to the benefit of the City.

104. The City's repudiation of the Agreement after two years of affirmative performance, undertaken only when repudiation became financially advantageous to the City,

constitutes precisely the injustice that the doctrines of ratification and equitable estoppel exist to prevent.

105. The City has ratified the Agreement and is estopped from denying its validity and enforceability.

**COUNT VIII**
**SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF**
**(Against Defendant City of Woonsocket)**

106. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

107. The Agreement is a unique instrument that cannot be replicated or substituted. Monetary damages alone are inadequate to compensate Plaintiff for the City's ongoing refusal to honor the Agreement, because the Agreement governs Plaintiff's tax obligations for a twelve-year period and the City's continued imposition of inflated bills causes irreparable harm to Plaintiff's ability to operate, finance, or sell the property.

108. Plaintiff is entitled to specific performance of the Agreement, requiring the City to honor the payment schedule set forth in Section 5 of the Agreement for the full twelve-year term.

109. Plaintiff is further entitled to a preliminary and permanent injunction prohibiting the City from enforcing tax bills in excess of the amounts set forth in the Agreement, from imposing penalties or interest on amounts not owed under the Agreement, and from taking any enforcement action, including tax liens or tax sale proceedings, with respect to the subject property based on amounts in excess of the Agreement.

110. Plaintiff is likely to succeed on the merits, will suffer irreparable harm absent injunctive relief, the balance of hardships favors Plaintiff, and injunctive relief will serve the public interest by enforcing the sanctity of recorded municipal agreements.

**COUNT IX**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**
**(Against Defendant City of Woonsocket)**

111. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

112. This Count is pleaded in the alternative, and only to the extent the Agreement were held invalid or unenforceable in whole or in part.

113. Plaintiff conferred substantial benefits upon the City. In reliance on the City's promised tax stabilization, Plaintiff purchased and invested $3,809,000 in a Program property, undertaking precisely the investment that the City Council determined in Ordinance 16 O 16 would inure to the benefit of the City. Plaintiff tendered PILOT payments in accordance with the Agreement and have paid a total of $43,195.55 in cash to the City on Account R01-0006-40.

114. The City appreciated and accepted those benefits. It accepted and retained Plaintiff's payments, issued the September 2023 abatement, billed the property at the contractual amount, and continues to assess and tax the enhanced value of the property that exists because of the investment Plaintiff made in reliance on the promised stabilization.

115. Under Rhode Island law, where a municipality acts within its general corporate powers and a particular agreement is defective only in the execution of the power, the municipality is held liable for the benefits it received in the course of the transaction.

The City indisputably possesses the power to stabilize the taxes on the subject property under R.I. Gen. Laws § 44-3-9, a power its City Council exercised through Ordinance 16 O 16.

116. It would be inequitable for the City to retain the benefits of Plaintiff's payments and investment while repudiating the stabilization that induced them. If the Agreement were held unenforceable, the City would be unjustly enriched by its retention of all amounts paid or exacted in excess of the stabilized payment schedule and by its retention of the value of the benefits conferred by Plaintiff's investment.

117. Plaintiff is entitled to restitution measured by, at a minimum, all amounts paid to or exacted by the City in excess of the stabilized payment schedule, together with such further restitution as equity requires.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

**A.** A declaratory judgment declaring that the PILOT Agreement is valid, binding, and enforceable for its full twelve-year term;

**B.** Specific performance of the Agreement, ordering the City to honor the payment schedule set forth in Section 5;

**C.** Preliminary and permanent injunctive relief prohibiting the City from enforcing tax bills in excess of the amounts set forth in the Agreement, from imposing penalties, interest, or liens, and from taking any enforcement action against the property;

**D.** Compensatory damages for breach of contract, including the overpayment of approximately $34,419, ongoing excess billings, diminution in property value, consequential damages from loan covenant defaults, and loss of the benefit of the bargain;

**E.** In the alternative, restitution for unjust enrichment, including all amounts paid to or exacted by the City in excess of the stabilized payment schedule and the value of the benefits conferred upon and retained by the City;

**F.** Compensatory damages under 42 U.S.C. § 1983 against Defendant Pagliarini individually and Defendant City for the constitutional violations described herein, including the costs of the abandoned eviction proceeding, the rent left unpaid during the tenant's continued occupancy, and damages for the deprivation of constitutional rights;

**G.** Punitive damages against Defendant Pagliarini individually to the extent permitted by law;

**H.** Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

**I.** Pre-judgment and post-judgment interest; and

**J.** Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
PLAINTIFF,
By its Attorneys,

*/s/ Andrew R. Bilodeau*

Andrew R. Bilodeau, Esq. #7174
Ryanna T. Capalbo, Esq. #8314
Carl P. Kustell, Esq. #10857
Bilodeau Capalbo, LLC
1350 Division Road, Suite 102
West Warwick, RI 02893
Tel: 401-300-4055
Fax: 401-633-7511
abilodeau@bilodeaucapalbo.com
rcapalbo@bilodeaucapalbo.com
ckustell@bilodeaucapalbo.com

August 5, 2026

## VERIFICATION

STATE OF RHODE ISLAND
COUNTY OF Kent

I, Joshua Hennessy, being first duly sworn, depose and state that I am a Manager of Plaintiff Madison Leigh Properties LLC and am authorized to make this verification on behalf of Plaintiff; that I have read the foregoing Verified Complaint and know the contents thereof; and that the factual allegations contained therein are true and accurate to the best of my knowledge, except as to those matters alleged upon information and belief, and as to those matters, I believe them to be true.

______________________________

Subscribed and sworn to before me this 10th day of September 2026.

______________________________
Notary Public
My Commission Expires: 8/22/2030

Michael Hanna
Notary Public
State of Rhode Island
MY COMMISSION EXPIRES 8-22-2030
Commission #50519